## EMERIC v. GILMAN.

The private property of an inhabitant of a county is not liable to seizure and sale on execution for the satisfaction of a judgment recovered against the county.

No execution can issue upon a judgment rendered against a county. When a judgment is rendered against a county, it is the duty of the supervisors to apply such funds in the treasury of the county as are not otherwise appropriated, to its payment; or if there are no funds, and they possess the requisite power, to levy a tax for that purpose, and if they fail or refuse to apply the funds, or to execute the power, resort may be had to a *mandamus*. But if they have no funds, and the power to levy the tax has not been delegated to them, the Legislature must be invoked for additional authority.

APPEAL from the District Court of the Seventh Judicial District, County of Contra Costa.

In March, 1856, the defendant, Gilman, recovered judgment against the county of Contra Costa for upwards of twenty thousand dollars, and in January, 1857, issued execution and levied upon the funds in the hands of the treasurer of the county, and

upon the public buildings of the county.  His right to seize these funds and buildings having been decided against him, (7 Cal., 52,) he sued out an alias execution, and levied upon certain real estate, the private property of the plaintiff, who was one of the inhabitants of the county at the time the judgment was ren dered, and has been such inhabitant ever since.  It was admitted that the county possessed no more right to, or interest in, this property, than in the property of any other inhabitant of the county, and that demand was made upon the plaintiff for the payment of the judgment before the levy of the execution.

The present case was brought against Gilman and the sheriff to enjoin the sale under this alias execution.  The plaintiff ob tained a decree perpetually enjoining the sale, and from this decree the defendants appealed.

*Geo. F. & W. H. Sharp* for Appellants.

I.  The inhabitants of a county, through their constituted pub lic agents, may act outside of their sovereign capacity, and when they do thus act and contract a debt, a right springs up in favor of the creditor, against all the inhabitants, and it follows as a necessary consequence that a judgment against a county is a judgment against its inhabitants—the real debtors, in fact—and an execution upon the judgment may be levied on any property within the county not exempt from execution.

This proposition is fully sustained by authority.

In the case of the Attorney-General *v.* Corporation of Exeter, 2 Russell's Rep., 63, Lord Eldon held "that a fee-farm rent, chargeable on a city, might be demanded of any one who holds property in it, and he would be left to obtain contribution from the other inhabitants."

Parker, C. J., in Merchants' Bank *v.* Cook, 4 Pick., 414, held that "towns, parishes, precincts, etc., ere but a collection of in dividuals with certain corporate powers for political and civil purposes, without any corporate fund from which a judgment can be satisfied, but each member of the community is liable, in his person or estate, to the execution which may issue; each in dividual, therefore, may well be thought to be a party to a suit brought against them by their collective name."

The same principle has been recognized as settled law in Chase *v.* Merrimack Bank, 19 Pick., 568.

So, in the case of Beardsley *v.* Smith, 16 Conn. R., 376, the Su preme Court of Connecticut considered the question for the first time, and in a masterly and conclusive opinion, based upon prin ciple and authority, decided that on execution against a town or county, the estate of an inhabitant may be lawfully taken to satisfy it.  The appellants ask the attention of the Court to that case particularly.

There is a greater reason why this system should be es-

tablished in this State than elsewhere. In England, and the States where the foregoing rule of decision has been established, there is no statutory right given to the inhabitants to avert this charge upon their estate in any case whatever.

Our statute (Wood's Digest, p. 639, Art. 3330, § 21) provides "that any person, being a citizen and tax-payer, may oppose the allowance of any claim."

Every inhabitant individually has a day in Court. This respondent has exercised that right, as he has, in fact, carried on all the previous litigation concerning this claim, in the county's name.

The appellants, therefore, submit that this rule of decision should obtain in this State, whereby not only justice will be awarded to him, but a most salutary benefit will be conferred upon the inhabitants of a county themselves, as they will know their responsibility, and will be watchful and pause before pledging the faith of the county and creating the large debts that must finally be liquidated by themselves.

And the individual acting upon the faith of a county will have some security. A remedy will accompany his right.

Unless such a rule obtains, a county can, after receiving and enjoying that which forms the consideration of the debt, assume a hostile position, and occupy it securely against its creditor for all time.

*E. W. F. Sloan* for Respondent.

1. I insist, as an undeniable proposition of law, in this State, that the private property of an individual inhabitant of a county is not liable to be seized and sold on execution for the satisfaction of a judgment recovered against such county.

In undertaking to controvert this proposition, the defendant mainly relies upon the case of Beardsley *v.* Smith, 16 Conn., 374.

The city of Bridgeport had issued certain bonds, on which judgments had been recovered. Execution on one of these, had been levied of the goods of the plaintiff in that action, who brought an action of trespass, *de bonis asportatis*, against the sheriff. The sheriff, by his plea, justified under the writ; and the case was decided on demurrer to said plea.

The judgment in that case was expressly rendered against the "mayor, aldermen, common council, and freemen of the city of Bridgeport;" and the execution in form followed the judgment, and directed the officer to levy it upon "the goods, chattels, or lands of the said debtors."

"We know," says the Court, "that the relation in which the members of the municipal corporations in this State have been supposed to stand, in respect to the corporation itself, as well as to its creditors, has elsewhere been considered, in some respects, peculiar."

In that respect, the Court say that they have borrowed from the institutions of Massachusetts, and refer to the cases of The Merchants' Bank v. Cook, 4 Pick., 405; Riddle v. The Proprietors of the Locks and Canals of Merrimack River, 7 Mass., 187; Brewer v. Inhabitants of New Gloucester, 14 Mass., 216.

That the practice of holding the individual inhabitants liable, as in case of a copartnership, is peculiar to the New England States, is expressly admitted in Beardsley v. Smith, and in Atwater v. Woodbridge, 6 Conn., 223.

In some of these States, such local custom has been expressly sanctioned by legislative enactment. It is true, that in one or two instances, their Courts speak of the practice there established as having originated in England, but the cases cited do not warrant the supposition. The case of Russell v. The Men of Devon, 2 T. R., 671, establishes the very reverse.

Lyell v. The Board of Supervisors of St. Clair County, 3 McLean R., 580, was a bill in equity to subject certain bonds or other securities, held by the defendants, to the payment of a judgment against the county. Mr. Justice McLean held that a creditor's bill would lie, and regarded that as the only source of relief, except a resort to the taxing power of the county.

He expressly held that a county could not be sued at common law, citing 2 T. R., 667; 7 Mass., 187; 2 Serg. & R., 371; and, referring to the practice in the New England States, remarked:

" In Massachusetts, the doctrine is established that on a judgment against a county or town, the property of any citizen may be taken in satisfaction. But this doctrine is not maintainable in this State."

If it were in the power of the Court to frame a law for such cases, there would be found to be the most cogent reasons for refusing to adopt the practice contended for by the appellants.

Any law which would subject the individual property of one inhabitant of a county, to the satisfaction of a demand of that character, would, of necessity, give him recourse against all the rest of the inhabitants for contribution. In parishes, towns, or other small communities, such a practice might be made to operate without any very great hardship or inconvenience. But in the case of a county, it would be worse than no remedy at all. Inasmuch, however, as the Court will only determine what the law is, and apply it as it is found to be, the policy of the supposed rule need not be here discussed.

It is undeniably certain that the right to proceed against the private property of the appellee is not given by the common law, nor by any statute law of this State.

On this point, I respectfully refer the Court to the case of Hunsacker v. Borden, 5 Cal. R.; also, the case of Russell v. The Men of Devon, 2 T. R., 671, which was an action against some of the inhabitants of the county of Devon, for an injury

sustained in consequence of the county bridge being out of repair; but it was held that it could not be maintained.

That seems to have been the first experiment of the kind in the English Courts.

FIELD, J., after stating the facts of the case, delivered the opinion of the Court—TERRY, C. J., concurring.

The only question presented for consideration is, whether the private property of an inhabitant of a county is liable to seizure and sale on execution for the satisfaction of a judgment recovered against the county.

In support of the affirmative of this question, several authorities are cited by the appellant, principally from the reports of Massachusetts and Connecticut. Upon examination, they will be found to admit that the doctrine sustained by them is peculiar to the New England States.

In Massachusetts, the individual liability of the inhabitants of towns and parishes is treated as an exception to the general rule, and is founded upon immemorial usage. (5 Dane's Ab., 158; Chase *v.* Merrimack Bank, 19 Pick., 568; Gaskill *v.* Dudley, 6 Met., 551.)

In Beardsley *v.* Smith, (16 Conn., 374,) a judgment was recovered against the city of Bridgeport, a municipal corporation—a circumstance which does not affect the principle in question—and the Court, in holding that the execution issued upon the judgment might be levied upon and satisfied out of the private property of an individual member of the corporation, says: " We know that the relation in which the members of municipal corporations in this State have been supposed to stand, in respect to the corporation itself, as well as to its creditors, *has elsewhere been considered in some respects peculiar.* We have treated them, for some purposes, as parties to corporate proceedings, and their individuality has not been considered as merged in their corporate connection. Though corporators, they have been holden to be parties to suits by or against the corporation, and individually liable for its debts."

We are unable to find any adjudged case in the other States going to the extent of the Courts in New England, and, as we have seen, the rule is there regarded as peculiar, or founded on immemorial usage. There appear to us insurmountable difficulties in the way of any just application of the rule. The inhabitants of a county are constantly changing; those who contributed to the debt may be non-residents upon the recovery of the judgment, or the levy of the execution; those who opposed the creation of the liability may be subjected to its payment, whilst those by whose fault the burthen has been imposed may be entirely relieved of responsibility. Again, it is a settled principle that whenever one of several is held liable for their joint

debt, he may have recourse, upon its payment, to the others for contribution.   To enforce this right against the inhabitants of a county, even where its population is small, would lead to such a multiplicity of suits as to render the right utterly valueless.   Or if, as might be the case, the party should institute his action against the county for the amount which he had thus paid on its account, and recover judgment, he might, in turn, levy upon the property of another inhabitant, and even of the original creditor himself, if he should also be an inhabitant of the county.   And it might be insisted that the creditor, if an inhabitant of the county, was only entitled to a proportional part of his judgment from the other inhabitants, or why might not the entire judgment be satisfied out of his own property ?   If all the private property of the inhabitants of a county may be indiscriminately seized by the officer, we do not perceive any ground for excepting that of the creditor himself.   And if a contribution was sustained, the person who was compelled to pay more than his share would be obliged to resort to a similar remedy, and thus there would be such a continuing series of difficulties and inconveniences attending the assertion of the rule for which the appellants contend, as to render it a source of far greater evil than good.

In Russell v. The Men of Devon, (2 Term, 667,) an action was brought against the MEN dwelling in the county for an injury sustained by an individual in consequence of a breach of their duty in not keeping a bridge in repair; and Lord Kenyon, C. J., held that there was no law or reason for supporting the action against the defendants, and observed that, "if it be reasonable that they should be by law liable to such an action, recourse must be had to the Legislature for that purpose." And in the same case, Ashhurst, J., said : "It is a strong presumption that that which never has been done can not by law be done at all. And it is admitted that no such action as the present has ever been brought, though the occasion must have frequently happened.   But it has been said that there is a principle of law on which this action may be maintained, namely : that where an individual sustains an injury by the neglect or default of another, the law gives him a remedy.   But there is another general principle of law which is more applicable to this case, that it is better that an individual should sustain an injury than that the public should suffer an inconvenience.   Now, if this action could be sustained, the public would suffer a great inconvenience; for, if damages are recoverable against the county, at all events they must be levied on one or two individuals, who have no means whatever of reimbursing themselves ; for, if they were to bring separate actions against each individual of the county for his proportion, it is better that the plaintiff should be without remedy."

Whoever becomes a creditor of a county, must look to its revenues alone for payment. The statute has authorized a suit against the county by which his demand may pass into judgment, but it has given no remedy by execution. When the judgment is rendered, it becomes the duty of the supervisors to apply such funds in the treasury of the county as are not otherwise appropriated, to its payment, or if there are no funds, and they possess the requisite power, to levy a tax for that purpose, and if they fail or refuse to apply the funds, or to exercise the power, he can resort to a *mandamus*. But if they have no funds, and the power to levy the tax has not been delegated to them, the Legislature must be invoked for additional authority. (Act to create a Board of Supervisors, § 24 ; Practice Act, as amended, § 219 ; Gilman *v.* Contra Costa County, 8 Cal., 52 ; Wilson *v.* Commissioners of Huntington, 7 Seargt. and Rawle, 199.)

Judgment affirmed.