Lyon v. City of Elizabeth.

---

ISAAC E. LYON v. CITY OF ELIZABETH.

1. The private property of individuals within the limits of a municipal corporation cannot be subjected to the payment of its debts except by taxation.

2.  Property used by such corporation in the exercise of its functions of government cannot be taken in execution upon a judgment against the corporate body.

3.  The taxing power ordinarily furnishes the only means a public corporation possesses for raising the revenues necessary to discharge its obligations.

4.  The creditor may establish his claim by judgment, and it then becomes the duty of the proper officers to provide the means of payment out of the public revenues, which duty is enforceable by *mandamus*.

On motion to set aside levy.

Argued at November Term, 1880, before Justices VAN SYCKEL and MAGIE.

For the motion, *W. R. Wilson.*

For the plaintiff, *G. T. Parrot.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The plaintiff having recovered a judgment against the city of Elizabeth in this court, caused a writ of *fieri facias* to be issued thereupon, by virtue of which the sheriff of Union county has levied upon eight several lots of land in said city, and advertised the same for sale to satisfy said judgment.

Lots numbers 1, 2, 3, 4 and 7 were purchased by the city at a sale made under the authority of the city charter for unpaid taxes assessed thereon.

Lots numbers 5 and 6 were conveyed to the city for the purpose of erecting school-houses thereon for public schools, but no school-house has, as yet, been erected upon either lot.

Lot number 8, upon which there is a dwelling-house, is a lot lying within the exterior lines of a public street recently laid out by the city. The lot has been condemned for the purposes of the highway, but the house has not yet been removed, and is rented to a tenant.

On behalf of the city, application is made to set aside this levy.

In England an action would not lie against a *quasi* political corporation for breach of duty except by force of positive law, as in the case of neglect to make hue and cry, for which an action was given against the hundred by the statute of Winton. 13 *Edw. I.*

Upon the rendition of judgment the remedy for enforcing its payment was not by execution against the property of the corporation, but by levying the damages out of the property of any one or more of the persons within the limits corporate.

Outside of the New England States it has never been held that the creditors of a municipal corporation can resort to the individual property of the inhabitants to satisfy a judgment obtained against the corporate body.

The practical construction of the courts in New England has been that in an action by or against a municipal corporation, every member of it is a party to the suit, and upon that ground the practice there held has been maintained. *Chase* v. *Merrimack Bank,* 19 *Pick.* 564; *Beardsley* v. *Smith,* 16 *Conn.* 368.

In *Rees* v. *City of Watertown,* 19 *Wall.* 107, this practice was pronounced to be indefensible, and contrary to the fundamental principle embodied in the constitution of the United States, that no man shall be deprived of his property without due process of law.

In suits against municipal corporations the individual citizen is not a party to the proceeding, he is not served with process and has no opportunity of being heard in his defence.

It seems to be clear, also, that a *fi. fa.* against the public property of a municipal corporation is unknown to the common law. The reason why, in the absence of express legislative sanction, these political divisions of the state cannot be subjected to such process, is obvious.

Municipal corporations are erected for political purposes only, and are mere instrumentalities through which the legislature administers the civil policy of the state.

The legislature delegates to them such measures of political power as may be deemed essential for the efficient administration of their local affairs and for the government of the people within the corporate limits.

Their control of property is intended only for corporate purposes, and is to be applied only to promote the objects for which they are erected into governments.

The taxing power ordinarily furnishes the only means they possess for raising the revenue essential to defray their expenses.

The municipality cannot, in the absence of express legislation, be deprived of the means indispensable to the exercise of the functions with which it is charged.

Otherwise a judgment creditor, by force of an execution, could destroy the corporate powers by withdrawing the resources, without which they cannot be exercised.

It would be manifestly contrary to the theory upon which a part of the sovereignty of the state is delegated to local governments to concede to an individual the right thus to arrest their operations.

The unrestricted right in the creditor to pursue the corporation by execution could, for all practical purposes, as effectually annul a city charter as its absolute repeal. *Monaghan* v. *City of Philadelphia*, 28 *Penna. St.* 207; *Schaffer* v. *Cadwallader*, 36 *Penna. St.* 126; *City of Chicago* v. *Hasley*, 25 *Ill.* 595; *Dill. on Mun. Corp.*, §§ 446, 686; *Commonwealth* v. *Perkins*, 43 *Penna. St.* 400; *Frank* v. *Chosen Freeholders of Hudson*, 10 *Vroom* 347.

In a recent decision by the Supreme Court of the United States, (*Meriwether* v. *Garret*, 102 *U. S.* 472,) the immunity from execution of property held by a city for public uses was very broadly recognized.

In *Emeric* v. *Gilman*, 10 *Cal.* 404, Justice Field says :

" Whoever becomes a creditor of a county must look to its revenues alone for payment. The statute authorizes a suit against the county by which the demand may pass into judg-

ment, but it has given no remedy by execution, and when the judgment is rendered the plaintiff must resort to *mandamus*."

Mr. Freeman, in his work on Executions, section 22, takes the same view :

"A judgment against a county or muncipal corporation is ordinarily no more than the mere establishment of a valid claim, for which it is the duty of the proper officers to provide means of payment out of the revenues of the defendant. It is error to award or issue execution on such judgment."

There are cases which hold that a political corporation is impressed with a dual character, the one public, the other private. In the exercise of their powers, governmental and public, they are clothed with the immunities of sovereignty. When they step outside of the domain where they are engaged strictly in the exercise of sovereign powers, and make contracts in their private capacity, they incur the responsibilities of individuals or private corporations. *Lloyd* v. *Mayor of New York*, 1 *Seld.* 369 ; *Clarke* v. *Rochester*, 24 *Barb.* 446, 482.

Assuming that when they make an engagement in their private capacity, the law will afford every remedy incident to the enforcement of ordinary contracts, property acquired for, and employed in the discharge of their sovereign functions, could not be diverted to the satisfaction of obligations resting upon them in their character of private corporations. Logically, property held in their private capacity, could alone be appropriated to the liquidation of such private claims, by process of execution.

But it is insisted that by force of the first section of the act concerning judgments (*Rev., p.* 520,) all lands are liable to be levied on and sold by execution, whether the property of individuals or municipal corporations.

By the common law, execution went against lands or tenements of the defendant at the suit of the king only. The plaintiff could have satisfaction only of goods, chattels and the present profits of lands by *fieri facias* or *levari facias*, but not the possession of the lands themselves, in consequence of the

feudal principles which prohibited alienation and the encumbering of the *fief* with the debts of the owner.

In England the sale of lands by execution is the creature of statutory regulation since the restrictions upon alienation began to wear away.

The act to subject lands in this state to sale by execution was passed February 16th, 1799, (*Pat. L.* 368,) and was intended to bring within the reach of creditors, then entitled to make their money by execution, the landed property of their debtors.

There is nothing in the act which expressly, or by necessary intendment, brings the public property of municipal corporations within its operation.

Under it, creditors had no more right to sell lands devoted to the public uses of the corporation than they had, prior to its passage, to sell the furniture necessary in the use of its public offices.

It would be a startling proposition to hold that a creditor could seize and sell a court-house or a jail, and that the sheriff could be required to put him in possession of it. To give the act so wide a range would be a constant menace to the life of the body corporate, and so clearly contrary to public policy, that it cannot be conceived that it was intended to be so applied.

In *Monaghan* v. *City of Philadelphia*, 28 *Penna. St.* 210, the court said, "it was very clear that none of the property necessary for governmental purposes could be seized and sold, even if the usual process for collecting a judgment could issue against such corporation." It will be impossible for these political bodies to dispense the important functions of government committed to them, if they are, to the same extent as individuals, subject to the ordinary process of levy and sale by execution.

The practice in this state has uniformly been to issue execution against the municipal body, not to seize and sell its public property, but for the purpose of laying a foundation for *mandamus* proceedings. In aid of the judgment creditor legisla-

tion has been deemed necessary. *Rev., p.* 391, § 9, repealed by act of March 14th, 1879, (*Pamph. L., p.* 293); act of March 27th, 1878, (*Pamph. L., p.* 182.)

An implication may arise from the language of these acts that a public corporation may possess property which shall be subject to seizure under a *fi. fa.*, but there is nothing in their terms which presumably enables a creditor to deprive it of such property as is essential to the beneficial exercise of its granted powers.

These statutory provisions should be strictly construed, to prevent the mischief which would flow from the practice sought to be enforced in this case.

All the real estate levied on in this case is exempt from sale. Two lots were conveyed to and are held by the city for school-house purposes.

The house on one lot is, under the terms of the charter, to be sold and the proceeds appropriated to paying the damages on the street. It cannot, at the will of the creditor, be diverted from the use for which the law has marked it.

The remaining lots were purchased by the city for unpaid taxes, and are held as a means of enabling it to raise the necessary revenues for current expenses. These lands are held for public uses, for out of them the city must realize the funds essential to the discharge of its obligations. A sale by execution would surely result in a ruinous sacrifice of the property, and would defeat the collection of taxes, without paying the city debt.

Nothing could be more hurtful to the city than such an interference with the collection of its revenues.

What relief the court will give the judgment creditor on *mandamus* proceedings cannot now be considered.

The levy must be set aside.