637 A.2d 1303

JERSEY CENTRAL POWER & LIGHT CO., PLAINTIFF, v. KINGSLEY ARMS, INC. AND ASBURY PARK HOUSING AUTHORITY, DEFENDANTS.

KINGSLEY ARMS, INC., PLAINTIFF, v. HOUSING AUTHORITY AND URBAN REDEVELOPMENT AGENCY OF THE CITY OF ASBURY PARK, DEFENDANT.

Superior Court of New Jersey
Law Division Monmouth County
Civil Part

Decided August 31, 1993.

70

*William J. Wolf, Michael M. DiCicco,* and *Daniel W. Sexton* for plaintiff Kingsley Arms, Inc. (*Bathgate, Wegener, Dugan & Wolf,* attorneys).

*Michael J. Israels, Judith B. Appel,* and *Jeanette M. Samra* for defendant (*Fitzpatrick & Israels,* attorneys).

FISHER, J.S.C.

Before this court is the objection, pursuant to *R.* 4:59, of defendant Asbury Park Housing Authority ("APHA") to a levy

placed upon its bank accounts by plaintiff Kingsley Arms, Inc. ("Kingsley"). Kingsley has cross-moved for an order compelling a turnover of the funds which have been levied upon. These motions call into question the meaning, scope and, most significantly, the constitutionality of *N.J.S.A.* 40A:12A–34.[1]

Our courts have never addressed the constitutionality of *N.J.S.A.* 40A:12A–34, and have rarely addressed the meaning or scope of *N.J.S.A.* 40A:12A–34 or other similar statutes.[2] To put

---

[1] *N.J.S.A.* 40A:12A–34 provides in full:

All property of a redevelopment agency or housing authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same, nor shall any judgment against a redevelopment agency or housing authority be a charge or lien upon its property; provided, that nothing herein contained shall apply to or limit the rights of the holder of any bonds to pursue any available remedy for the enforcement of any pledge or lien given by a redevelopment agency or housing authority.

[2] *N.J.S.A.* 40A:12A–34 is virtually identical to a number of other statutes which exempt the property of various public entities from execution. *See, e.g., N.J.S.A.* 40:66A–22 ("All property of an incinerator authority shall be exempt from levy and sale by virtue of an execution and no execution or other judicial process shall issue against the same nor shall any judgment against an incinerator authority be a charge or lien upon its property"); *N.J.S.A.* 58:14–34.21 ("All property of the commissioners [of the Passaic Valley sewerage district] shall be exempt from levy and sale by virtue of an execution and no execution or other judicial process shall issue against the same nor shall any judgment against the commissioners be a charge or lien upon its property"); *N.J.S.A.* 40:14B–59 ("All property of a municipal [or county water and sewage disposal] authority shall be exempt from levy and sale by virtue of an execution and no execution or other judicial process shall issue against the same nor shall any judgment against a municipal authority be a charge or lien upon its property"); *N.J.S.A.* 40:68A–60 ("All property of a municipal port authority shall be exempt from levy and sale by virtue of an execution and no execution or other judicial process shall issue against the same nor shall any judgment against a municipal port authority be a charge or lien upon its property"); *N.J.S.A.* 40:37B–38 ("All property of [a county recreation] authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same, nor shall any judgment against an authority be a charge or lien upon its property"); *N.J.S.A.* 40:37A–82 ("All property of [a county improvement] authority shall be exempt from levy and sale by virtue of an execution and no execution or other judicial process shall issue against the same nor shall any judgment

these issues in context requires, first, a review of the factual background and history of the parties' disputes.

## I. BACKGROUND

The facts are relatively simple. Kingsley is the owner of the Kingsley Arms Apartments, a 101-unit building located at 200 Deal Lake Drive, Asbury Park, New Jersey. In 1971, APHA entered into a lease with Kingsley's predecessor in title whereby APHA leased ninety units in order to enable APHA to provide low-rent housing for eligible low-income families.

Kingsley brought this action for damages due to APHA's failure to pay rent. The chronic failure of APHA to pay rent to Kingsley in a timely manner in the past few years has resulted in the entry of several judgments against APHA totalling $250,155.31. These judgments, as well as a judgment obtained by Jersey Central Power & Light Co. against APHA in the consolidated case, were satisfied by way of execution in the same manner to which APHA

against an authority be a charge or lien upon its property"); *N.J.S.A.* 13:17A–40 ("All property of the [Hackensack Meadowlands Food Distribution Center] [C]ommission shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same, nor shall any judgment against the commission be a charge or lien upon its property"); *N.J.S.A.* 5:12–168 ("All property of the Casino Reinvestment Development Authority shall be exempt from levy and sale by virtue of an execution and no execution or other judicial process shall issue against the same nor shall any judgment against the Casino Reinvestment Development Authority be a charge or lien upon its property").

Due to the potential impact that a decision on the constitutionality of *N.J.S.A.* 40A:12A–34 could have on these other enactments, the court directed counsel, at oral argument on August 6, 1993, to notify the Attorney General of these proceedings pursuant to *R.* 4:28–4. The Attorney General has informed counsel that he will intervene only in an appellate proceeding to defend the statute's constitutionality and has chosen not to offer his views on the issue at this time.

now objects.[3]

Subsequently, Kingsley obtained two judgments against APHA—one on March 9, 1993, for $129,789.49, and another on April 30, 1993, in the amount of $67,863.29. Kingsley obtained a writ of execution to satisfy these judgments.[4] Thereafter, the Sheriff of Monmouth County levied upon two of APHA's bank accounts.[5] These levies constitute the subject of the present proceedings.

Since *N.J.S.A.* 40A:12A–34 provides that "All property of . . . [a] housing authority shall be exempt from levy and sale by virtue of an execution," APHA seeks to vacate the two existing levies. APHA asserts that this statute applies to the present situation and exempts APHA's property from execution. In response, Kingsley argues that this statute does not apply because the Legislature did not intend to bar execution in these circumstances; in the alternative, Kingsley argues that if the statute does apply to bar execution, then it must be unconstitutional.

---

[3] It should be noted, however, that at the time of these prior executions, the predecessor to *N.J.S.A.* 40A:12A–34 barred execution only on the "real property" of housing authorities. *See N.J.S.A.* 55:14A–18.

[4] Neither party has explained why Kingsley should be permitted to seek execution on these interlocutory orders. The judgments are interlocutory because they are not final as to all issues; in fact, there is pending before this court another motion for summary judgment filed by Kingsley which is presently returnable on September 3, 1993, which demonstrates that all issues as to all parties have not yet been adjudicated. Nor have these interlocutory orders been certified as final pursuant to *R.* 4:42–2, although they appear to be eligible candidates for certification.

Since APHA has not suggested that the levies should be quashed for this reason, and in light of the court's ultimate decision on the current motions, there is no need to further consider this lack of finality on Kingsley's claimed right to execution.

[5] The Sheriff levied upon APHA's bank accounts at Midlantic National Bank (in the amount of $19,500) and at New Jersey National Bank (in the amount of $132,364.09).

## II.  DOES *N.J.S.A.* 40A:12A–34 BAR EXECUTION?

### A.  APPLICABILITY OF THE STATUTORY EXEMPTION

The legislative history of the Local Redevelopment and Housing Law ("the Act"), *N.J.S.A.* 40A:12A–1 to –49, demonstrates that the Legislature intended to consolidate the multiple and complicated existing statutes by replacing them with a single, comprehensive statute governing all redevelopment agencies and housing authorities irrespective of when they were created:

> c.  ... there has grown a varied and complex body of laws, all directed by diverse means to the principal goal of promoting the physical development that will be most conducive to the social and economic improvement of the State and its municipalities.
>
> d.  It is the intent of this act to codify, simplify and concentrate prior enactments relative to local redevelopment and housing, to the end that the legal mechanisms for such improvement may be more efficiently employed.

*N.J.S.A.* 40A:12A–2.  Thus, in general, the Act was intended to do little more than "simplify and concentrate" the variety of prior enactments on the subject.[6]  Against this backdrop, it is necessary to examine Kingsley's various arguments against the application of the statutory exemption.

### 1.  Is APHA a "Housing Authority" Within the Meaning of the Act?

■  Kingsley argues that APHA is not a "housing authority" falling within the parameters of this legislation.  In support of its contention, Kingsley refers to *N.J.S.A.* 40A:12A–3, which defines "housing authority" as "a housing authority *created or continued pursuant to this act*."  Kingsley reasons that because the municipal governing body of the City of Asbury Park did not adopt a resolution or an ordinance "reconstituting" APHA after the effective date of the statute, APHA does not have the right to invoke

---

[6] The adoption of the Act in 1992 would hardly be relevant if the statutory exemption had not been amended by the Act to insulate "all property" whereas the prior enactment (*N.J.S.A.* 55:14A–18) insulated only "all *real* property" (emphasis added).

*N.J.S.A.* 40A:12A–34. This argument exalts form over substance. There is nothing in the statute or its legislative history to suggest that all municipalities were required to "reconstitute" their housing authorities, a purely ministerial event, in light of the adoption of the Act. Indeed, this argument flies in the face of the Legislature's stated intent to simplify the laws creating and governing housing authorities.

## 2. Is the Levy Governed By *N.J.S.A.* 40A:12A–34 or its Predecessor?

*N.J.S.A.* 40A:12A–34 was not adopted until August 5, 1992, but was expressly made retroactive to January 18, 1992. Prior to the adoption of *N.J.S.A.* 40A:12A–34, only "real" property of a housing authority was exempt from execution. *N.J.S.A.* 55:14A–18 [7] (superseded by *N.J.S.A.* 40A:12A–34).

Kingsley appears to argue that it is entitled to levy on APHA's bank accounts because the lease between Kingsley and APHA was entered into years prior to the adoption of *N.J.S.A.* 40A:12A–34. Since the levy would have been permitted by that statute's predecessor (*N.J.S.A.* 55:14A–18), this issue must be explored.

It is, however, easily resolved. All relevant events in this case occurred after *N.J.S.A.* 40A:12A–34 was adopted. While, in this Court's view, the only critical question is whether the levy took place before or after the effective date of the statute (and it clearly occurred afterwards), the fact that this civil action was also not commenced until after the date of adoption conclusively establishes that *N.J.S.A.* 40A:12A–34 governs the legitimacy of Kingsley's levies. The fact that the relationship between Kingsley and APHA underlying their disputes commenced many years before the adoption of *N.J.S.A.* 40A:12A–34 is of no consequence. When

---

[7] *N.J.S.A.* 55:14A–18 (emphasis added) provided in pertinent part:

All *real property* of an authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against an authority be a charge or lien upon its real property....

Kingsley commenced this action it must have understood that this limitation on its ability to collect on a judgment against APHA existed.

### 3. Does *N.J.S.A.* 40A:12A–34 Apply to Claims Against a Housing Authority for Rent?

Kingsley maintains that the Legislature could not possibly have intended to exempt all the property of housing authorities from execution, under all circumstances, when it enacted *N.J.S.A.* 40A:12A–34. Kingsley analogizes *N.J.S.A.* 40A:12A–16a(2), which authorizes a housing authority to lease or rent a building, to *N.J.S.A.* 40A:12A–34. Kingsley reasons that by enacting *N.J.S.A.* 40A:12A–16 the Legislature could not have intended to give a housing authority the power to avoid paying rent. Accordingly, Kingsley opines that *N.J.S.A.* 40A:12A–34 should not bar a landlord who has obtained a judgment for rent payments from executing on that judgment.

To credit Kingsley's argument would require this court to find ambiguity in the first two words of *N.J.S.A.* 40A:12A–34: "all property." Neither the word "all," nor the word "property," nor the phrase "all property," however, give rise to any ambiguity. One need not consult *Webster's Dictionary* to ascertain that the phrase "all property" simply means all assets possessed by APHA and would certainly include the bank accounts in question.

Whether the Legislature's logic in enacting the statute is faulty or the consequences arising from the statute are unjust is not for this court to question or reevaluate so long as the enactment was within the Legislature's power. Although Kingsley may speculate as to what the Legislature intended upon enacting the statute, this court looks not to such conjectures, but rather to the "plain, reasonable, and certain expressions of intention found on the face [of the statute]." *Wright v. Denn*, 23 *U.S.* (10 *Wheat.*) 204, 239, 6 L.Ed. 303 (1825). It is not for this court to inquire as to what the Legislature meant, only what the statute means. It is clear to this court that when the Legislature stated that "all property" is

exempt from execution, it meant "all property" capable of being executed upon—no more, no less.

Having determined that the statute clearly supports APHA's claim of exemption, this court must turn to the constitutional questions raised by Kingsley.

### B. CONSTITUTIONALITY OF *N.J.S.A.* 40A:12A–34

#### 1. Takings Clause

■ The United States and New Jersey Constitutions provide that "private property [shall not] be taken for public use, without just compensation." *U.S. Const.* amend. V; *N.J. Const.* art. 1, ¶ 20. Our Supreme Court has stated that a "taking" of private property traditionally necessitates physical occupation or appropriation. *Littman v. Gimello,* 115 *N.J.* 154, 161, 557 *A.*2d 314 (1989). This traditional mandate, however, began to erode, and " '[i]t is generally held in New Jersey [and] elsewhere ... [that] in a few narrowly defined situations' compensation will be awarded for 'noninvasive' governmental activity." *Id.* The Court has recognized a host of governmental actions that do not violate the Takings Clause of either the federal or state constitutions. *See, e.g., Bernardsville Quarry v. Bernardsville Borough,* 129 *N.J.* 221, 608 *A.*2d 1377 (1992) (a municipal ordinance regulating and licensing quarry operations did not constitute an unlawful taking of quarry owner's property); *Littman, supra,* 115 *N.J.* at 154, 557 *A.*2d 314 (declaring property as a potential site for a hazardous-waste facility does not constitute a taking without just compensation); *Schiavone Construction Co. v. Hackensack Meadowlands Development Comm'n,* 98 *N.J.* 258, 263, 486 *A.*2d 330 (1985) (acknowledging that "a compensable taking can occur when governmental action *substantially destroys* the beneficial use of private property" (emphasis added)). *But see Washington Market Enterprises, Inc. v. Trenton,* 68 *N.J.* 107, 343 *A.*2d 408 (1975) (urban development that substantially destroys the beneficial use of property is a "taking"). It is only when "the threat of condemnation has had such a substantial effect as to destroy the beneficial

use that ... a taking of property within the meaning of the Constitution" results. *Id.* at 122, 343 *A.2d* 408.

Kingsley argues that for *N.J.S.A.* 40A:12A–34 to be constitutional it cannot be construed "to prohibit a landlord from collecting on a judgment when its public tenant refuses to pay rent and has been adjudged repeatedly to have violated its lease." *Kingsley Brief,* p. 19. Kingsley acknowledges, however, that APHA has never asserted that it would not pay the rent owed to Kingsley, but rather, that it will voluntarily pay the judgments when its financial condition allows for such payments.

In light of the foregoing, this court holds that exempting all property of a redevelopment agency or housing authority from execution does not constitute an illegal "taking" under either the federal or state constitutions. Although it has been recognized that physical occupation or appropriation of land can result in an illegal "taking", the events at bar do not constitute a "taking" because alternative methods exist for obtaining payment. The availability of such other avenues to obtain judicial relief prevents a finding of unconstitutionality under the Takings Clause. A "taking" without just compensation is a situation that leaves a plaintiff with absolutely no judicial redress. This is not the case here.

Kingsley can seek enforcement of its levy to satisfy its judgments for APHA's failure to pay rent via an action in lieu of prerogative writs to obtain the former prerogative writ of mandamus. *R.* 4:69–6. In *Lyon v. City of Elizabeth,* 43 *N.J.L.* 158, 161 (E. & A. 1881), the Court of Errors and Appeals set aside a levy against real property owned by the City of Elizabeth, stating:

> The municipality cannot, in the absence of express legislation, be deprived of the means indispensable to the exercise of the functions with which it is charged.
>
> Otherwise a judgment creditor, by force of an execution, could destroy the corporate powers by withdrawing the resources, without which they cannot be exercised.
>
> It would be manifestly contrary to the theory upon which a part of the sovereignty of the state is delegated to local government to concede to an individual the right thus to arrest their operations.

*Accord Grosso v. Paterson,* 59 *N.J.Super.* 412, 157 *A.*2d 868 (Law Div.1960); *First National Bank, Bound Brook v. Lavalette,* 10 *N.J.Misc.* 1023, 162 *A.* 106 (Sup.Ct.1932).

APHA was established to provide safe and adequate public housing and redevelopment projects to low-income families. APHA asserts that its only means of obtaining operating funds is from the United States Department of Housing and Urban Development ("HUD"). Allowing Kingsley to execute on APHA's bank accounts would apparently strip APHA of its resources and wreak havoc on its operations. The contemplation of these disturbing consequences doubtlessly formed the basis for the Court's decision in *Lyon,* and presumably, the Legislature's enactment of *N.J.S.A.* 40A:12A–34 (and the other statutes set forth in note 2, *supra* ). As a result, such attempts at execution contravene the purposes of the Act by interfering with APHA's power to provide housing to indigent families.

Recognizing the importance of allowing public entities to exercise their powers and ordinary functions, and yet, recognizing as well the rights of the creditor, the *Lyon* Court held:

> In *Emeric v. Gilman,* 10 Cal. 404, Justice Field says:
>
> "Whoever becomes a creditor of a county must look to its revenues alone for payment. The statute authorizes a suit against the county by which the demand may pass into judgment, but it has given no remedy by execution, and when the judgment is rendered the plaintiff *must* resort to *mandamus.*"
>
> Mr. Freeman, in his work on Executions, section 22, takes the same view:
>
> "A judgment against a county or municipal corporation is ordinarily no more than the mere establishment of a valid claim, for which it is the duty of the proper officers to provide means of payment out of the revenues of the defendant. It is error to award or issue execution on such judgment."

*Id.* 43 *N.J.L.* at 161–162 (emphasis added).

Accordingly, this court holds, as the statute mandates, that Kingsley cannot execute on APHA's bank accounts, but that an appropriate remedy for Kingsley to obtain satisfaction of its judgments against APHA exists in the form of an action in lieu of prerogative writs. *See United States Trust Co. of New York v. State,* 69 *N.J.* 253, 353 *A.*2d 514 (1976) (discussing mandamus

proceedings). Since a remedy exists, no unconstitutional "taking" results from the application of the statute.

## 2. Contract Clause

The Contract Clause of the United States Constitution provides that "No State shall . . . make any . . . Law impairing the Obligation of Contracts." *U.S. Const.* art. 1, § 10, cl. 1. Although the Contract Clause on its face forbids a state from infringing upon the right to freely contract, "the Clause is not an absolute and is not to be read 'with literal exactness like a mathematical formula.'" *Kessler v. Tarrats,* 194 *N.J.Super.* 136, 145, 476 *A.*2d 326 (App.Div.1984) (quoting *United States Trust Co. v. New Jersey,* 431 *U.S.* 1, 21, 97 *S.Ct.* 1505, 1517, 52 *L.Ed.*2d 92 (1977)). In ascertaining the constitutionality of a governmental act, a court "must balance the prohibitions of the contract clause against the authority of the police power which requires the State to safeguard the vital interests of its citizens." *Id.* (*Veix v. Sixth Ward Ass'n,* 310 *U.S.* 32, 38, 60 *S.Ct.* 792, 794, 84 *L.Ed.* 1061 (1940)); citing *Home Building & Loan Ass'n v. Blaisdell,* 290 *U.S.* 398, 435–36, 54 *S.Ct.* 231, 239, 78 *L.Ed.* 413 (1934). In short, "it is to be accepted as commonplace that the Contract Clause does not operate to obliterate the police power of the States." *Fidelity Union Trust Co. v. New Jersey Highway Authority,* 85 *N.J.* 277, 286–87, 426 *A.*2d 488 (1981), *app. dism.,* 454 *U.S.* 804, 102 *S.Ct.* 76, 70 *L.Ed.*2d 73 (1981). Police power enactments will be upheld in spite of the Contract Clause so long as the "statutes exercising those police powers serve a legitimate public purpose and the adjustment of the private parties' duties and obligations is on reasonable terms and conditions." *Id.* at 287, 426 *A.*2d 488.

Kingsley's argument that *N.J.S.A.* 40A:12A–34 violates the Contract Clause is unpersuasive. First, this court notes that the Contract Clause's viability has waned over the years. Second, APHA's failure to pay rent due to a lack of sufficient federal funding from HUD does not substantially impair Kingsley's contract rights. Kingsley has two alternatives to collect on the judgments entered against APHA: (1) wait until HUD appropri-

ates enough money to APHA to pay the judgments, or (2) obtain relief in lieu of prerogative writs to compel payment.[8] The existence of the second alternative negates the argument that *N.J.S.A.* 40A:12A–34 violates the Contract Clause.

Even though Kingsley's claim for relief is foreclosed by *N.J.S.A.* 40A:12A–34, it can safely be said that the balancing of the creditor's rights with the State's exercise of its police powers clearly does not violate the Contract Clause. The State has properly exercised its police powers to serve a legitimate public purpose. Unequivocally, providing safe and adequate public housing to needy families constitutes not merely a "legitimate," but a "compelling," public objective. Kingsley's attempts to seize APHA's financial resources through execution could very well imperil this critical public objective. These levies could prevent APHA from performing its daily activities, and ultimately impair its ability to provide cost-effective housing to low-income families. *N.J.S.A.* 40A:12A–34 (which only alters the procedure by which Kingsley may attempt collection on its judgments but does not bar relief in other forms) is a legitimate means of preventing interference with this public objective without remotely running afoul of the Contract Clause.

### 3. Due Process Clause

The Due Process Clause of the Fourteenth Amendment provides that "No State shall make or enforce any law which shall ... deprive any person of life, liberty, or property, without due process of law." *U.S. Const.* amend. XIV; *see also N.J. Const.*

---

[8] The court is not unmindful of the fact, as Kingsley must also be painfully aware, that ingrained in every contract between a private citizen and a public entity is "the knowledge that it is a sovereign entity with which they are dealing and that 'the reservation of [the] essential attributes of sovereign power' is as much a part of their contract as that which is expressly stated." *United States Trust Co. of New York v. State,* 134 *N.J.Super.* 124, 197, 338 A.2d 833 (Law Div.1975), *aff'd,* 69 *N.J.* 253, 353 A.2d 514 (1976). Therefore, when Kingsley initially became involved with APHA, it must have understood that its ability to obtain its part of the bargain from APHA was subject to the need and ability of APHA to obtain funding from HUD.

art. 1, ¶ 1. It is settled that property rights cannot be taken without due process of law. *See Clarke v. Brown,* 101 *N.J.Super.* 404, 412, 244 *A.*2d 514 (Law Div.1968). Our courts also have recognized that a final judgment is a property right. *Shade v. Colgate,* 3 *N.J.* 91, 95–96, 69 *A.*2d 19 (1949). It has been long established, however, that "[t]here is no denial of due process if one remedy is abolished and a substantial and reasonably efficient remedy is substituted in its place." *Shade, supra,* 3 *N.J.* at 95, 69 *A.*2d 19.

The first issue that this court must address in determining whether *N.J.S.A.* 40A:12A–34 denies Kingsley due process is whether Kingsley's right to obtain satisfaction of its judgments against APHA constitutes property rights. While Kingsley's judgments are no doubt property rights, *Shade, supra, N.J.S.A.* 40A:12A–34 does not destroy those rights, but merely alters the means by which Kingsley can enforce its judgments. The statute only deprives a judgment creditor of seizing governmental property by way of execution; it does not prevent a creditor from pursuing other remedies to obtain satisfaction. As noted above, Kingsley can pursue relief in lieu of prerogative writs to compel payment from APHA, or wait until HUD appropriates enough funds to APHA to pay Kingsley. Consequently, Kingsley has not been denied due process, and *N.J.S.A.* 40A:12A–34 does not violate the federal and state due process clauses.

### 4. Summary

In sum, this court holds that *N.J.S.A.* 40A:12A–34 does not violate the Takings Clause, Contract Clause, or Due Process Clause. Until events occur in the future to demonstrate otherwise, this court must assume that the creation of APHA by the City of Asbury Park, and APHA's authority to rent the premises in question, implies that APHA and the City of Asbury Park intended also that provisions would be made for the payment of rent. To assume the contrary is to assume that there was an intent to violate the Constitution by taking property without compensation which is, as said by the Court of Errors and Appeals

in *Haycock v. Jannarone*, 99 *N.J.L.* 183, 185, 122 *A.* 805 (E. & A.1923), a "thought not to be tolerated." APHA suggests, and this court agrees, that an order in the form of a writ of mandamus will provide Kingsley with the means of obtaining relief. Until that is shown not to be so, this court will assume that Kingsley has a remedy. In light of the existence of this remedy, it must be concluded that *N.J.S.A.* 40A:12A–34 is constitutional on its face and as applied to APHA under these circumstances.

## III. THE REMEDY AVAILABLE TO APHA

Having established that *N.J.S.A.* 40A:12A–34 applies to the case at hand, that it is constitutional, and that the method by which Kingsley must seek payment is by way of *R.* 4:69, this court must now consider whether the relief that Kingsley would obtain in an action in lieu of prerogative writs may be provided in this civil action or whether Kingsley will be required to commence a new action.

## A. HAS KINGSLEY ESTABLISHED A RIGHT TO THE FORMER PREROGATIVE WRIT OF *MANDAMUS?*

It has been recognized that to be successful in obtaining a writ of *mandamus* for the payment of monies from a public entity, the claimant must show a valid and legal right to payment. *Grosso v. Paterson*, 59 *N.J.Super.* 412, 416, 157 *A.2d* 868 (Law Div.1960); *Gowdy v. Bd. of Educ. of Paterson*, 89 *N.J.L.* 137, 138, 98 *A.* 12 (Sup.Ct.1916). Kingsley suggests that all that is needed to obtain a writ of mandamus has already been proven in this case. Kingsley has obtained two summary judgments in this action; in fact, APHA did not contest Kingsley's entitlement to those judgments,[9] nor has APHA ever contested Kingsley's right to payment. Thus, Kingsley maintains that the requirements for the issuance of a writ of mandamus are undeniably present in this case.

---

[9] In response to the motions for summary judgment, APHA agreed that the amounts sought were due and did not object to the entry of the judgments.

APHA, on the other hand, alleges that this court should consider APHA's budgetary constraints in ascertaining whether to issue such relief to Kingsley.  APHA also contends that this court should consider the timing of payments made by HUD and that, perhaps, HUD should be joined as a party to such an action.

While these considerations may be relevant in the future in determining the appropriate relief to which Kingsley should be entitled if it is necessary to implement the writ of mandamus, these issues are irrelevant in deciding whether the writ should issue.  Kingsley has proven all of the elements necessary to obtain a writ of mandamus.  A writ of mandamus is an appropriate remedy when the plaintiff has a clear right to the relief sought, the defendant is under a clear and definite duty to act, *Borough of Eatontown v. Danskin,* 121 *N.J.Super.* 68, 73, 296 *A.*2d 81 (Law Div.1972), and there is no other "adequate means of redress" available, *Switz v. Middletown Township.,* 40 *N.J.Super.* 217, 225, 122 *A.*2d 649 (App.Div.1956).  APHA concedes these elements are present, *APHA Brief,* p. 7–8, and there is, in fact, no doubt that Kingsley has demonstrated its entitlement to this relief.  Kingsley's "clear right to relief" is demonstrated by the summary judgments, APHA's "clear and definite duty to act" lies with its obligation to pay Kingsley's valid claim for rent due and owing, and there is no "adequate means of redress" because of the existence of *N.J.S.A.* 40A:12A–34.

## B.  CAN A WRIT OF *MANDAMUS* ISSUE IN THIS CIVIL ACTION?

Kingsley has not commenced an action in lieu of prerogative writs pursuant to *R.* 4:69.  As a result, APHA formalistically argues that Kingsley must do so before an order directing payment may issue.  APHA does not specify any policies or interests that will be advanced if this court required Kingsley to institute a new action in accordance with *R.* 4:69, rather than deciding whether the writ should issue in the context of this civil action.

Our court rules are not so rigid as to require Kingsley to turn such square corners.

The New Jersey Court Rules "were promulgated for the purpose of promoting reasonable uniformity in the expeditious and even administration of justice." *Handelman v. Handelman,* 17 *N.J.* 1, 10, 109 *A.2d* 797 (1954). The rules should not "in themselves be the source of any extensive litigation; they should be subordinated to their true role, *i.e.,* simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits." *Id.; see Ragusa v. Lau,* 119 *N.J.* 276, 283–84, 575 *A.2d* 8 (1990).

This court finds no reason, and APHA has not offered any valid reason, why Kingsley should incur the added expense and bear the additional trouble and delay that would result if compelled to file a new complaint in lieu of prerogative writs. To require Kingsley to engage in such a formality would serve no valid purpose. Therefore, this court holds that Kingsley need not initiate a new action to obtain relief which, beyond doubt, it has already proven its absolute right to. *Accord R.* 1:1–2. The issues have been fully briefed and argued and it is entirely fair and appropriate to consider the propriety of issuing a writ of mandamus to have been adjudicated by consent pursuant to *R.* 4:9–2.

## IV. CONCLUSION

This court holds that (1) *N.J.S.A.* 40A:12A–34 applies to exempt from execution the bank accounts of APHA; (2) *N.J.S.A.* 40A:12A–34 is not unconstitutional under the Takings Clause, the Contract Clause, or the Substantive Due Process Clause; (3) the appropriate remedy for Kingsley to obtain satisfaction of its judgments against APHA is not by execution, but by an action in lieu of prerogative writs; (4) Kingsley has sufficiently proven all of the elements necessary to obtain the former writ of mandamus and it is not necessary to institute a separate action in lieu of prerogative writs; instead, this court will dispense with this

formality and issue an appropriate order directing payment to Kingsley by APHA.[10]

Counsel for plaintiff shall submit an appropriate order under the five day rule.

---

[10] This court expresses no opinion on whether execution would be permissible if there is no compliance with the writ of mandamus.