642 A.2d 1069

JERSEY CENTRAL POWER & LIGHT COMPANY, PLAINTIFF, v. KINGSLEY ARMS, INC. AND ASBURY PARK HOUSING AUTHORITY, DEFENDANTS.

KINGSLEY ARMS, INC., PLAINTIFF, v. HOUSING AUTHORITY AND URBAN REDEVELOPMENT AGENCY OF THE CITY OF ASBURY PARK, DEFENDANT.

Superior Court of New Jersey
Law Division Monmouth County

Decided December 15, 1993.

608

*William J. Wolf (Bathgate, Wegener, Dugan & Wolf,* attorneys), for Kingsley Arms, Inc.

*Andre Shramenko (Fitzpatrick & Israels,* attorneys), for Housing Authority and Urban Redevelopment Agency of the City of Asbury Park.

FISHER, J.S.C.

The purpose of this supplemental opinion is to clarify the reasons for the entry of the particular form of order that memorialized the rulings contained in the Court's written opinion of August 31, 1993. 271 *N.J.Super.* 68, 637 *A.2d* 1303.

In the earlier opinion, the motion of the Asbury Park Housing Authority ("APHA") to quash the levies placed on its bank accounts was granted, and the motion of plaintiff Kingsley Arms, Inc. ("Kingsley") for an order mandating the payment of the amounts previously adjudicated due, by way earlier motions for summary judgment, was also granted. On September 3, 1993 argument was heard concerning the form of an order memorializing those rulings; an order was entered that same day.[1]

APHA argued that the order should not contain any time frame within which compliance was required. On the other hand, Kingsley contended that the quashing of the levies should be made

---

[1] The order entered on September 3, 1993 was later amended on September 7, 1993 (since the former incorrectly stated the amount due to Kingsley).

contingent upon APHA's compliance with the order directing payment. Neither approach of the parties was appropriate. Contrary to APHA's position, the order entered directed APHA to "immediately pay" to Kingsley the amount due; and contrary to Kingsley's argument, the vacation of the levies was not made contingent upon APHA's compliance with the direction to pay.

■ Kingsley's approach was clearly unwarranted by law. As explained in the Court's opinion of August 31, 1993, *N.J.S.A.* 40A:12A–34 bars execution against APHA's assets under the present circumstances. To delay vacating the levies on APHA's bank accounts, no matter how understandable Kingsley's impatience in obtaining the funds due it, would require this Court to act inconsistently with the clear direction of the Legislature.

■ On the other hand, APHA sought the entry of an order that would leave unbounded the time for its compliance. To enter an order consistent with APHA's approach would require the Court to ignore APHA's already unwarranted delay in honoring its obligations to Kingsley. Indeed, it is noteworthy that, on September 3, 1993, APHA argued that it anticipated being in a position to pay Kingsley by the end of September (when HUD, according to APHA, was expected to reimburse APHA). It is now early December and Kingsley still has not been paid the amounts adjudicated due in March and April, 1993 [2]. Meanwhile, APHA's monetary obligations to Kingsley continue to accumulate.[3]

■ Given that APHA's prognostications as to its ability to pay Kingsley were grossly inaccurate, this Court's unwillingness

---

[2] Kingsley obtained two monetary awards, by way of summary judgment, on March 9 and April 30, 1993, in the amounts of $129,789.49 and $67,863.29, respectively.

[3] In other proceedings in this matter, APHA was found liable to Kingsley for having willfully held over in the leased premises after termination of the lease term on June 30, 1993. The damages for that holdover have been ascertained to be $80,200 per month (calculated at the rate of double the yearly value of the premises) pursuant to *N.J.S.A.* 2A:42–6.

to leave open-ended the time for APHA's compliance was undoubtedly correct. Moreover, APHA's approach to the form of the order was inconsistent with the nature of the relief sought. The order that was entered previously, as described in the Court's earlier opinion, was in the form of a writ of mandamus [4]. A writ of mandamus is, in essence, a command [5] to do a specific act, that arises from the official station of the party to whom the order is directed. *Borough of Eatontown v. Danskin*, 121 *N.J.Super.* 68, 73, 296 *A.*2d 81 (Law Div.1972). Its purpose is to compel an act the performance of which has been clearly established. It is, in short, a drastic writ of an extraordinary character. *Kerr v. United States District Court*, 426 *U.S.* 394, 402–403, 96 *S.Ct.* 2119, 2123–2124, 48 *L.Ed.*2d 725 (1976). While the view that it is "stern, harsh, inflexible, unreasoning and cast-iron in nature," *State ex rel. Sho–Me Power Corp. v. Hawkins*, 337 *S.W.*2d 441, 444 (Mo. App.1960), may be somewhat over-stated, mandamus is indeed an "extraordinary remedy, to be reserved for extraordinary situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 *U.S.* 271, 289, 108 *S.Ct.* 1133, 1143, 99 *L.Ed.*2d 296 (1988).

When a party seeking monetary relief against a housing authority demonstrates that its right to relief is "clear and indisputable"—a burden which Kingsley certainly sustained—then coercive relief must issue. *See, Grosso, supra.* Once issued, the writ, by its very nature, commands *immediate* compliance. Accordingly, once the right to that relief is established, any order falling short of compelling complete and instant compliance is inconsistent with that undertaking.

---

[4] In order to defeat Kingsley's constitutional attack on *N.J.S.A.* 40A:12A–34, APHA quite correctly urged that Kingsley had a remedy in the form of a writ of mandamus, citing *Grosso v. Paterson*, 59 *N.J.Super.* 412, 157 *A.*2d 868 (Law Div.1960). APHA can hardly now be heard to complain of the Court's agreement with that position and the fashioning of an appropriate remedy based upon the circumstances presented and the nature of the relief welcomed by APHA.

[5] The word "mandamus" literally means "we command".

Compelling APHA to "immediately" pay Kingsley did little more than make clear to APHA what the issuance of a writ of mandamus inherently required. APHA viewed the entry of an order of payment without specification of the time for compliance as something which would allow it to forego payment to Kingsley until the providing of funding by HUD: an event which appears never to arrive. The addition of the word "immediately" to the order served to render clear the meaning of the order, a meaning which APHA appeared ready to obfuscate in its absence. Under the circumstances [6], this Court deemed it more than appropriate to fashion an order which would compel APHA to "immediately" pay what is admittedly owed to Kingsley. Kingsley should not be left to wait for APHA's HUD funding like some character from a Samuel Beckett play.

Lastly it should be noted that APHA's consternation over the use of the word "immediately" in the order has lost any credibility that it once may have had. Shortly after the entry of that order, the Court granted a temporary stay based upon both parties' representations that they would seek leave to appeal the aggrieving portions of the order. Motions for leave to appeal were filed and, as a result of an emergent application to the Appellate Division, the stay was extended for 30 days while the parties obtained adjudication in this Court of the remaining issues. The stay is still in effect and thus, since September 3, 1993, APHA has *not* been under an obligation to "immediately" pay Kingsley. APHA has had over 3 months to take the steps necessary to gather the funds needed to satisfy its obligations to Kingsley. That passage of time has not made the slightest difference. In short, the arguments made by APHA against the entry of an order that it "immediately" pay Kingsley have proven illusory;

---

[6] The most compelling circumstance which led to the entry of an order requiring immediate payment was the fact that the amounts were adjudicated due months earlier. APHA had already been provided with ample time to take all necessary steps to provide payment to Kingsley without the need for further proceedings.

indeed, hindsight has demonstrated the propriety of the form of the order that was entered months ago.

Since the parties have indicated a continued desire to seek review of the September 3, 1993 order, as well as orders entered by the Court since that date, the Court deemed it appropriate to set forth the basis for the entry of the particular form of order which memorialized the rulings set forth in the August 31, 1993 Opinion by way of this Supplemental Opinion. *See, R.* 2:5–1(b).