645 A.2d 1194

NATIONAL AMUSEMENTS, INC., PLAINTIFF–APPELLANT, v. NEW JERSEY TURNPIKE AUTHORITY, AND HERBERT I. OLARSCH, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 1, 1994—Decided July 1, 1994.

Before Judges STERN and KEEFE.

*Morris M. Schnitzer* argued the cause for appellant (*Mr. Schnitzer* on the brief and reply brief).

*Stanley Tannenbaum* argued the cause for respondents (*Sills Cummis Zuckerman Radin Tischman Epstein & Gross,* attorneys; *Mr. Tannenbaum* of counsel; *Mr. Tannenbaum* and *Steven R. Rowland* on the brief).

PER CURIAM.

With the following caveat, we affirm the summary judgment dismissing counts two, three and four of the amended complaint substantially for the reasons expressed by Judge Alvin Weiss in his opinion published at 261 *N.J.Super.* 468, 619 *A.*2d 262 (Law Div.1992). Judge Weiss considered the impact of the Tort Claims Act "[a]ssuming *arguendo*" that summary judgment was not otherwise appropriate. 261 *N.J.Super.* at 480, 619 *A.*2d 262. He found the claims barred thereunder by virtue of the "discretionary acts" immunity, *N.J.S.A.* 59:3–2, the "execution or enforcement of laws" immunity, *N.J.S.A.* 59:3–3, and the "misrepresentation" immunity, *N.J.S.A.* 59:3–10. *Id.* at 480–81, 619 *A.*2d 262. We

agree with his conclusion that the acts were "discretionary," *see Kolitch v. Lindedahl,* 100 *N.J.* 485, 495–96, 497 *A.*2d 183 (1985); *Costa v. Josey,* 83 *N.J.* 49, 55, 415 *A.*2d 337 (1980). We therefore need not decide if the defendants' conduct relative to the acquisition of real property, under *N.J.S.A.* 27:23–5(j), involves "execution or enforcement of laws" within the meaning of *N.J.S.A.* 59:3–3. Nor need we consider whether defendants' communications necessarily embodied a "misrepresentation," as opposed to a "representation" of then-present fact or intent, for purposes of *N.J.S.A.* 59:3–10.

Plaintiff also appeals from the dismissal of the first count of its amended complaint seeking damages for inverse condemnation, which is not a subject of the published opinion. Plaintiff contends that the Turnpike Authority "accomplished a temporary inverse taking of 8.74 acres" of plaintiff's property, and that the "inverse taking ... was a substantial factor in bringing about National's loss." It therefore challenges the June 23, 1993 summary judgment for defendants entered on count one.

Before the Turnpike Authority announced its intention to take plaintiff's property, plaintiff had obtained site plan approval and a building permit to build a twelve screen theatre. The parties stipulated that "[o]n or before May 5, 1985, Plaintiff commenced construction of a 12 screen indoor theatre complex on the 18.74 acre tract of the former site of the Newark Drive–In Theatre."

According to plaintiff, on May 15, 1985 it was informally advised by defendants that its entire 18.74 acre tract would probably be condemned, but as a result of discussions commencing on May 30, 1985 plaintiff was told that only 8.74 acres would be taken.[1] The

---

[1] Plaintiff says that at the May 30, 1985 meeting it "tried to limit the taking to the boundaries of the proposed interchange, a parcel of about 8.74 acres adjoining the Turnpike." Plaintiff also points to a memorandum to defendant Olarsch from the Turnpike's Supervising Engineer, dated July 3, 1985, indicating that "the area of taking is about 8.8 acres." Plaintiff asserts that subsequent to the May 30 meeting "the Authority indicated that it required only a part of National's property, namely the indicated parcel," citing a certification of its vice

subsequent written communications between the parties are detailed in Judge Weiss's opinion, 261 *N.J.Super.* at 471–72, 619 *A.*2d 262. Defendants advised plaintiff not to develop the property in any way, or to do so without expectation of compensation for the enhanced value. According to the parties' stipulation, "[o]n or before September 16, 1985" plaintiff suspended construction of the twelve theatre complex and commenced "seeking to obtain approval for construction of a 10 screen indoor theatre complex on approximately 10 acres of the site." In essence, plaintiff declined to follow the defendants' advice and proceeded with its scaled down construction plans.

Plaintiff claims it did not construct on the portion of the property which the Turnpike actually threatened to condemn. It asserts that its decision to seek and obtain, as it did in December 1985, revised site plan approval for a scaled down ten screen theatre on ten acres of its property was premised on communications from defendant Authority relative to the property actually to be taken. Its efforts to build, however, were delayed while a necessary sanitary landfill disruption permit authorizing the construction was obtained from the Department of Environmental Protection and Energy.[2] The permit was not obtained until September 7, 1990, after which actual construction of the ten theatre complex was commenced. In the interim, in February 1990 the Turnpike Authority abandoned its plans for the widening project which included the need to condemn plaintiff's property, and on March 14, 1990 the Authority notified plaintiff to that effect. Plaintiff ultimately obtained permits to complete construction of a twelve theatre complex on the balance of the 18.74 acre tract.

---

president accompanying the recitation of facts in a trial court brief and the July 3, 1985 memo.

[2] Apparently the need for such permits was called to plaintiff's attention by the Turnpike Authority. Plaintiff commenced the application process in July 1986. A "minor" sanitary landfill disruption permit which authorized environmental testing was issued in 1988.

Before us, plaintiff does not contend that the defendants' action or inaction constituted a "taking" of the entire tract until the Authority's final decision was rendered. Plaintiff seeks no compensation for the ten acres on which the ten screen complex was ultimately constructed or for any delay incident to its construction. Rather, plaintiff asserts that there was an inverse condemnation of 8.74 acres, that portion of the parcel plaintiff essentially abandoned as a result of the Turnpike's communications. Plaintiff so argues notwithstanding that defendants' written communications advising plaintiff not to develop its property pending finalization of the Authority's plans were not so limited.

Plaintiff contends there are facts which reflect actual threats affecting its beneficial use of this portion of the property and points out that our Supreme Court has recognized that there can be a "non-invasive" taking which may occur when there is an " 'actual *or threatened* interference with the use of the property of such a permanent, serious or continuing nature to justify the conclusion that a 'taking' had occurred.' " *Littman v. Gimello,* 115 *N.J.* 154, 166, 557 *A.*2d 314 (emphasis added), *cert. denied* 493 *U.S.* 934, 110 *S.Ct.* 324, 107 *L.Ed.*2d 314 (1989), quoting *Kingston East Realty Co. v. State of N.J.,* 133 *N.J.Super.* 234, 240, 336 *A.*2d 40 (App.Div.1975). *See also Washington Market Enterprises, Inc. v. City of Trenton,* 68 *N.J.* 107, 122, 343 *A.*2d 408 (1975) ("the threat of condemnation" can constitute a taking where it "has had such a substantial effect as to destroy the beneficial use that a landowner has made of his property"). But *Littman* also recognized that "[g]overnment plans ordinarily do not constitute invasion or taking of property." *Littman v. Gimello, supra,* 115 *N.J.* at 161, 557 *A.*2d 314, citing *Danforth v. United States,* 308 *U.S.* 271, 60 *S.Ct.* 231, 84 *L.Ed.* 240 (1939).

*Littman* dealt with declarations that plaintiffs' properties were potential sites for a hazardous-waste facility. Plaintiffs claimed that a "taking" occurred because of the delays incident to the testing and evaluation process before ultimate site selection was made. The Court declined under the circumstances to deal with

"speculative and hypothetical questions" with respect to governmental practices which delay decisions "concerning condemnation for an excessively long period of time" so as to constitute inverse condemnation. *Littman v. Gimello, supra,* 115 *N.J.* at 168–69, 557 *A.2d* 314. The Court upheld the dismissal of plaintiffs' complaints.

As this plaintiff points out, *Littman* in essence concluded that the claims therein were premature and the Court pointed out that "[i]f the property is not condemned and no decision is made concerning condemnation for an excessively long period of time, then plaintiffs can renew their inverse condemnation claims." *Id.* at 169, 557 *A.2d* 314. As plaintiff further develops, here the delay of a final decision was much longer and its property was not deemed merely a potential site subject to the testing required for a hazardous waste facility. However, we nevertheless conclude that this record does not warrant consideration of plaintiff's legal contentions regarding the scope of a "noninvasive" or inverse taking, nor even permits reversal for a trial on whether there was such a taking. The record before us simply presents no disputed issue of material fact relevant to the impact of the defendants' conduct. The undisputed critical facts suggest that plaintiff's beneficial use of its property was not, in reality, affected by the Turnpike's delay in formulating its decision making. As Judge Weiss noted in dismissing the first count:

> The uncontradicted record in this case is that Plaintiff applied for a sanitary disruption permit which was not obtained until September 7th, 1990, some six months after the Turnpike announced its abandonment of any proposed expansion of the highway where Plaintiff's property is located. Thus, Plaintiff has not demonstrated that it would have been able to use its property prior to September 7th, 1990, even without the action of the Turnpike. Clearly, the action of the Turnpike, assuming arguendo that it could be considered an inhibition of Plaintiff's right to use its property, was not the proximate cause of any delay in construction by the Plaintiff.

This is true with respect to the 8.74 acre parcel as well as the balance of the tract.

The judgment is affirmed.