884 A.2d 815

B & J REALTY, L.L.C., APPELLANT, v. NEW JERSEY
DEPARTMENT OF ENVIRONMENTAL
PROTECTION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 27, 2005—Decided October 18, 2005.

Before Judges COBURN, COLLESTER and LISA.

*Jack Plackter,* argued the cause for appellant (*Fox Rothschild,* attorneys; *Mr. Plackter* and *Allison L. Kashon,* on the brief).

*Robert L. Gambell,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Mr. Gambell,* on the brief).

The opinion of the court was delivered by

LISA, J.A.D.

We consider in this appeal a final decision by the New Jersey Department of Environmental Protection (DEP or Department), through its Land Use Regulation Program (Program) in which the Department (1) determined that it possessed jurisdiction over the proposed development of appellant, B & J Realty, L.L.C., under the Coastal Area Facility Review Act (CAFRA), *N.J.S.A.* 13:19-1 to -21, by virtue of a previously issued CAFRA sewer extension permit; (2) informed appellant that because of deficiencies in appellant's engineering submissions, the Department was unable to determine the accuracy of the location of the mean high water line as depicted on appellant's plans, and thus could not determine whether a separate jurisdictional basis for CAFRA applicability existed based on proximity of the development to that line; and (3) denied appellant's request for a hearing in the Office of Administrative Law (OAL).

We conclude that DEP's assertion of CAFRA jurisdiction based on the previously-issued permit is not supported by the record, and we reverse on that issue. With respect to the mean high water line location, we conclude that appellant raised a bona fide dispute regarding a material fact and is entitled to an adjudicatory hearing to resolve the factual dispute. On that issue we remand for further proceedings.

Appellant owns a forty-eight acre vacant tract in the City of Brigantine. The property is on Rum Point Island, located at the confluence of Absecon Channel and St. Georges Thorofare, one mile west of the location where Absecon Inlet empties into the Atlantic Ocean. Rum Point Island is one in a series of "stepping stone" islands in the bay area behind Brigantine Barrier Island

and Absecon Barrier Island (upon which Atlantic City is located) on which exists a causeway, Atlantic–Brigantine Boulevard, linking the two barrier islands.

On February 27, 2002, appellant received preliminary subdivision approval from the Brigantine Planning Board to develop its property, designated on the tax map as Block 8428, Lot 1. The original approval provided for seventeen building lots for the construction of seventeen single-family homes. The plans were later modified to provide for fourteen building lots for fourteen homes. The home sites would be located on a newly-constructed cul-de-sac on the upland portion of the tract, which has direct access to Atlantic–Brigantine Boulevard. In addition to the building lots, another lot in the subdivision would contain open space and buffer, and another would contain a sanitary sewer pump station and storm water basin. These would be maintained by a homeowners association. The remaining lot, consisting primarily of meadowlands, would be dedicated to the City, State or private not-for-profit conservation foundation. This large parcel would be left in its undisturbed natural state. It lies between the upland portion of the property, which is to be developed, and St. Georges Thorofare.

The property is in the R–1 Zoning District. No variances were required for the proposed development. The approval was conditioned upon obtaining necessary approvals from other governmental agencies, including a CAFRA "letter of approval or letter of non jurisdiction." Appellant's engineering plans, approved by the Planning Board, depict the mean high water line and, 150 feet landward, a corresponding "CAFRA Jurisdiction Line." As pertinent here, no CAFRA permit would be required if there is no development "between the mean high water line of any tidal waters ... and a point 150 feet landward of the mean high water line," *N.J.A.C.* 7:7–2.1(a)(2), and the development is a residential development having less than twenty-five dwelling units, *N.J.A.C.* 7:7–2.1(a)(5)(i). Appellant contends its engineer surveyed the property in accordance with all applicable engineering standards

and the resulting plans accurately reflect the location of the mean high water line and CAFRA Jurisdiction Line. The plans further reflect, according to appellant, that no development will occur in the CAFRA-proscribed area.

On May 20, 2002, appellant submitted to the Program its plans and a request for a "no jurisdiction" letter, stating that a CAFRA permit was not required for its development. On November 19, 2002, the Program responded by transmitting its "applicability determination for the Rum Point tract as issued [to a prior owner for a different proposed development] on June 20, 2000." In pertinent part, the June 20, 2000 letter stated:

> Based on a review of the submitted documentation, the Coastal Area Facility Review Act, CAFRA, is not applicable to the construction of a subdivision with less than 24 dwelling units more than 150 feet from Mean High Water (MHW). **The proposed sewer connection is regulated under CAFRA Permit No. 77-0211-5 which prohibited connection of** "motels, marinas, commercial, industrial uses and **residential structures along that section of Brigantine Boulevard adjacent to St. Georges Thorofare."** If you would like to discuss the restrictions of CAFRA Permit 77-0211-5 and its prohibition of connections to residential structures, please contact Mr. Karl Braun, Region Supervisor.

Appellant submitted the response to the Planning Board, which found it unacceptable because it did not pertain to appellant's proposed development. Further, it was at best ambiguous, stating generally CAFRA non-applicability for a residential subdivision this size located more than 150 feet from the mean high water line, but expressing regulatory authority by virtue of a previously-issued CAFRA permit prohibiting sewer connection by residential structures "adjacent to St. Georges Thorofare."

On July 1, 2003, appellant made another submission to the Program. It requested "clarification" of the Program's purported jurisdictional determination, which it had submitted to the Planning Board on April 16, 2003. Appellant included a new set of engineering plans, revised as of May 15, 2003, scaling back the project from seventeen homes, as contained in the plans initially submitted to the Planning Board and the Program, to fourteen homes.

On July 15, 2003, appellant again wrote to the Program, pointing out that CAFRA Permit No. 77–0211–5 had been amended in 1989 to identify specific lots to which its sewer connection prohibition applied, rather than the general reference to properties "adjacent to St. Georges Thorofare," and that appellant's lot was not included. Thus, appellant urged that its property was not subject to the sewer ban.

On July 21, 2003, the Program issued its determination. It stated it "has jurisdiction over this project by virtue of the CAFRA permit # 77–0211–5, for the Brigantine sewer line extension which precludes tie-ins to the collection system for residential structures located along St. George's Thorofare." It further stated that specific deficiencies in appellant's submission prevented the Program from "determining if additional CAFRA policies apply to the project." Thus, in its first point, the Program asserted CAFRA jurisdiction by virtue of Permit No. 77–0211–5. The second point referred to the location of the mean high water line. In particular, the July 21, 2003 determination stated:

> The engineering data docs not provide sufficient information concerning the Mean High Waterline as shown. This calculation is critical to determining whether the project is 150' from the mean high waterline. Your plan indicates that the extent of developable upland, the bulkheading and storm water impoundment are all reliant upon the accuracy of this tidal data. As you may be aware, any determination of this elevation must be substantiated through the use of National Ocean Service benchmark information. The benchmarks and tide station used in the determination of this elevation must be clearly indicated on the survey. In addition, the information should be updated to reflect the recently updated National Tidal Datum Epoch (1983–2001) and to include copies of all survey information and data used to define and delineate the locations of the Mean High Waterline.

Appellant requested an adjudicatory hearing in the OAL, disputing that the program had jurisdiction by virtue of Permit # 77–0211–5 and that its engineering plans were deficient. On October 31, 2003, the Program denied that request. It stated that its jurisdictional determination "constitutes final agency action and is not a contested case for which a hearing may be granted in the [OAL]." This appeal followed.

Before discussing appellant's arguments that the Program's assertion of CAFRA jurisdiction based on Permit # 77–0211–5 and its contention that appellant's plans were deficient regarding the location of the mean high water line were arbitrary, capricious or unreasonable, we briefly address two other issues.

Appellant argues that DEP's unjustified and unreasonable delay in responding to its request for a jurisdictional determination constitutes a temporary taking for which appellant should be compensated. The issue is not properly before us. Such a claim would have to be pursued in a separate civil action seeking compensation for damages caused by inverse condemnation. *See, e.g., E. Cape May Assocs. v. Dep't. of Envtl. Prot.,* 300 *N.J.Super.* 325, 342–43, 693 *A.*2d 114 (App.Div.1997). Further, this record hardly supports a conclusion that any delays by DEP were of the "extraordinary" type required to establish a compensable taking. *See, e.g., Littman v. Gimello,* 115 *N.J.* 154, 163, 557 *A.*2d 314, *cert. denied,* 493 *U.S.* 934, 110 *S.Ct.* 324, 107 *L.Ed.*2d 314 (1989). Indeed, much of the delay during the fourteen-month process was attributable to appellant, which waited five months before submitting to the Planning Board the Program's initial response, and then waited another two-and-one-half months before requesting clarification from the Program, necessitated, we presume, at least in part by appellant's ongoing modification of its plans during that time.

In its appellate brief, DEP argues it has jurisdiction on two levels, the second being Permit # 77–0211–5. "First, and foremost," it argues, "the Property is located on a bay island as defined by *N.J.A.C.* 7:7E–3.21 ...." Appellant does not dispute that Rum Point Island is a bay island. It first points out the obvious, that the Program never asserted the bay island location as a basis for CAFRA jurisdiction in the administrative proceedings now under review. Moreover, appellant argues that while the bay island location would subject its development to the Bay Island Corridor policy, codified at *N.J.A.C.* 7:7E–3.21, if a CAFRA permit were required, that policy does not provide an independent

basis for CAFRA jurisdiction. At oral argument, counsel for the Department conceded the point, and we agree. *See N.J.A.C.* 7:7E–1.2(c)3 (stating "[t]his chapter shall apply to all . . . CAFRA permits").

■ We now move on to the significant legal issues in this case. We first address Permit # 77–0211–5, upon which the Department based its determination that it has CAFRA jurisdiction. The permit was issued to the City of Brigantine on March 13, 1978 to provide the extension of sanitary sewer service to unsewered areas of the city, including Rum Point Island. The portion of the project that encompassed Rum Point Island contained a tie-in restriction for some of the area for which the service would otherwise be available. The permit stated the basis for the restriction:

> The other area is adjacent to St. Georges Thorofare along the southeastern alignment of [Atlantic-]Brigantine Boulevard. This strip of land at the entrance point to the island is currently undeveloped. The undeveloped open nature of this area provides an important image to the traveler on Route 87 [a portion of Atlantic–Brigantine Boulevard] upon entering and leaving the City. The current zoning designation for the land in question is R–4, which provides for the construction of single family housing and motel developments up to ten stories in height.
>
> In order for the Director of this Division to be able to issue a CAFRA permit he must be able to make the required positive findings under Section 10 and 11 of the Act specifically Section 10g, that a facility:
>
>> Would result in minimal practicable degradation of unique or irreplaceable land types, . . . and existing scenic and aesthetic attributes at the site and within the surrounding region.
>
> As the development of the section of the project area adjacent to St. Georges Thorofare with motels of a height up to ten stories would severely impact the aesthetic resources of this area (as well implying a traffic hazard due to increased ingress and egress to such intensive land uses) this permit shall be conditioned to prohibit tie-ins to the collection system of motels, marinas, commercial, industrial uses and residential structures along that section of [Atlantic-]Brigantine Boulevard adjacent to St. Georges Thorofare, in order to make the finding of Section 10g of CAFRA.

Accordingly, the Permit contained among its conditions the following:

3. There shall be no tie-ins to the collection system of motels, marinas, commercial, industrial uses and residential structures along the portion of the project site located adjacent to St. Georges Thorofare.

After issuance of the permit, Brigantine rezoned the area on which appellant's property is located from R-4 to R-1, with a thirty-five foot height restriction, thus eliminating the concern that ten story motels would degrade the aesthetic resource. The Department amended condition 3 of the permit in 1982 and again in 1985 to constrict and more specifically define its scope by designating by block and lot numbers the properties to which it applied. On June 13, 1989, the Department again amended Condition 3 to read: "There shall be no tie-ins to the collection system of motels, marinas, commercial, industrial uses and residential structures along the project site located adjacent to St. George's Thorofare, for Block 294B, Lots 1–8 (now Block 5605, Lots 1–8), and Block 303B, Lots 9–14 (now Block 5604, Lots 1–6), which are now zoned C-1 . . . ."

Appellant's property, Block 8428, Lot 1, is not included in the tie-in restriction of CAFRA Permit # 77–0211–5 as amended. This is consistent with the reason the restriction was imposed in the first place—to preserve a scenic and aesthetic resource (not to obstruct the view across the bay of travelers on Atlantic–Brigantine Boulevard). The restricted lots listed in the 1989 amendment are zoned C-1 and are on a narrow strip of the island, fronting directly on St. Georges Thorofare, whereas appellant's fourteen-home development is in an R-1 zone on a wider section of the island and will be separated from St. Georges Thorofare by a wide expanse of meadowlands.

The decisions of administrative agencies carry with them a presumption of reasonableness. *City of Newark v. Natural Res. Council*, 82 *N.J.* 530, 539, 414 A.2d 1304, *cert. denied*, 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.2d* 245 (1980). The role of an appellate court in reviewing an agency decision is a limited one. We will not reverse the decision of an agency unless it is arbitrary, capricious or unreasonable, or unless it is not supported by substantial credible evidence in the record as a whole. *In re*

*Distribution of Liquid Assets,* 168 *N.J.* 1, 10–11, 773 *A.*2d 6 (2001); *In re Taylor,* 158 *N.J.* 644, 656, 731 *A.*2d 35 (1999); *Campbell v. Dep't. of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963). But our review "is 'not simply a *pro forma* exercise in which [the court] rubber stamp[s] findings that are not reasonably supported by the evidence.'" *In re Taylor, supra,* 158 *N.J.* at 657, 731 *A.*2d 35 (quoting *Chou v. Rutgers,* 283 *N.J.Super.* 524, 539, 662 *A.*2d 986 (App.Div.1995), *certif. denied,* 145 *N.J.* 374, 678 *A.*2d 714 (1996)). An agency decision that is manifestly erroneous is not entitled to judicial deference and must be set aside. *L.M. v. Div. of Med. Assistance & Health Servs.,* 140 *N.J.* 480, 490, 659 *A.*2d 450 (1995).

In its final decision, the Department relied on the original provision of Permit # 77–0211–5. It ignored the fact that the permit was thrice amended since its issuance in 1978. Inexplicably, it has continued on appeal to ignore the amendments. As amended, the permit plainly does not apply to appellant's property. The Department's finding that it possessed jurisdiction requiring the issuance of a CAFRA permit based upon Permit # 77–0211–5 is not supported by the record and is clearly erroneous. Thus, the Department's assertion of CAFRA jurisdiction on that basis was arbitrary, capricious or unreasonable. We reverse that determination.

We next address the location of the mean high water line, which, in relation to the location of the proposed fourteen-home development, is determinative of whether a CAFRA permit is required by virtue of *N.J.A.C.* 7:7–2.1(a)(2). In its July 21, 2003 determination letter, the Department stated that deficiencies in appellant's engineering plans prevented it from determining the accuracy of the location of the mean high water line depicted on appellant's plans. The Department pointed to two specific deficiencies: (1) The determination must be substantiated by use of National Ocean Service benchmark information, and the benchmark and tide station used must be indicated on the survey; and (2) The information should be updated to reflect the recently updated National Tidal Datum Epoch (1983–2001).

■ Appellant contends that note 10 of the survey it submitted to the Department contains the required benchmark and tide station information. It further contends that the National Tidal Datum Epoch (1983–2001) was utilized, as confirmed by correspondence to the Department. The Department has noted no other deficiencies. On this record, therefore, we are left with a factual dispute on an issue that will be dispositive of CAFRA jurisdiction. Yet, the agency has taken the position that its jurisdictional determination "constitutes final agency action and is not a contested case for which a hearing may be granted in the [OAL]."

■ We reject this position. Where material disputed facts pertaining to jurisdiction exist, the agency must grant a plenary hearing for resolution of those facts. *Frank v. Ivy Club*, 120 *N.J.* 73, 98, 576 *A.*2d 241 (1990), *cert. denied sub. nom. Tiger Inn v. Frank*, 498 *U.S.* 1073, 111 *S.Ct.* 799, 112 *L.Ed.*2d 860 (1991) (citing *Bally Mfg. Corp. v. Casino Control Comm'n*, 85 *N.J.* 325, 334, 426 *A.*2d 1000, *appeal dismissed* 454 *U.S.* 804, 102 *S.Ct.* 77, 70 *L.Ed.*2d 74 (1981); *Cunningham v. Dep't of Civil Serv.*, 69 *N.J.* 13, 24–25, 350 *A.*2d 58 (1975)). To rule otherwise would subject to the caprice of the agency the rights of individuals who make a prima facie showing of facts which, if established, would result in jurisdiction or lack of it, whichever the case may be, if the agency simply rejects those facts.

That is what happened here with respect to the location of the mean high water line. The Department does not dispute that if all development in this fourteen-home project occurs more than 150 feet landward of that line it would not possess CAFRA jurisdiction and no CAFRA permit would be required. Appellant submitted plans prepared by a professional engineer, who represented that the mean high water line was accurately located in accordance with all applicable engineering standards, including those required by the Department. The Department contended the plans were deficient. A trial-type hearing is the appropriate mechanism for resolution of this material fact upon which CAFRA jurisdiction

hinges. Without it we are deprived of the ability to meaningfully review the agency action.

We remand for a determination of the accuracy of the location of the mean high water line as depicted on appellant's plans. We encourage the parties to meet immediately in the hope that the disputed factual issue can be amicably resolved. Failing that, these are our specific instructions. Within forty-five days of the date of this opinion the Department shall inform appellant in writing of the specific information it needs to determine the accuracy of the mean high water line. From the date appellant submits the requested information the Department shall within forty-five days render its decision. If the decision is favorable to the appellant, the dispute will be ended by a no-jurisdiction determination. If the Department determines that the line is inaccurately located in a manner that would result in CAFRA jurisdiction or that it remains unable to determine accuracy, and if appellant continues to assert the accuracy of the line, the Department shall refer the matter to the OAL as a contested case on the jurisdictional issue.

Reversed in part and remanded in part. We do not retain jurisdiction.